FILED
CLERK, U.S. DISTRICT COURT

DEC 2 8 2023

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

STATE OF CALIFORNIA                                      DISTRICT COURT

County _____                            Judicial District: Ninth
                                    Court File Number: SACR-16-00069
                            Case Type: Medical, various state law torts

Rawle Gerard Suite

Plaintiff                    No IFP
                             No CV-71
vs                           No CV-30                    CIVIL COMPLAINT

UNITED STATES OF AMERICA                      Case No.: 2:23-cv-10886 GHW-
Defendant                                                            SHK
                             DECLATORY RELIEF;


The plaintiff makes the following complaints against the defendant:

**If you have more than 1 complaint against defendant, list each complaint
seperately, including any supporting facts.**


1. Defendant is guilty of medical malpractice as a result of willful refusal
   to provide plaintiff with medical CARE and purposely delaying diagnosis and
   treatment of same, ALL causing plaintiff to needlessly suffer extreme pain,
   agony and mental anguish.

   Defendant's actions and inactions as described herein violated, continue to
   violate the California Constitution and Law, and the California Human
   Rights Act.

                    --------------------------------

2. The United States through Federal Employees at Berlin, NH and FCI Fort Dix,
   NJ, are guilty of improper medical CARE for plaintiff as described herein.

                    --------------------------------
                    --------------------------------

   For any other relief the Courts deem is fair and equitable.


   Based on the complaints and herein, plaintiff demands the following relief:
    See attached page 6A


                                    1

1A

<u>Tort Claim Facts:</u> Due Process, Amendment, Constitutional and Medical
Violations.

California County Civil Action:

<u>ACTS 1</u>: Procedural Background

    1. In 2016 plaintiff was charged by the United States in a Four Count
indictment with wire fraud, aiding and abetting, in violation of 18 USC
§1343. On May 25, 2016 CR 14.

    2. After indictment, plaintiff entered an open plea to all four counts
on June 5, 2017 without a written agreement.

    3. Plaintiff appealed his sentence, and it was affirmed by the Ninth
Circuit Court of Appeals. CR 136; 168;

    4. Plaintiff then filed a pro se to withdraw his guilty plea, arguing
his plea was involuntary and unintelligent citing ineffective
assistance of counsel.

    5. Defendant filed an opposition, construing his pro se motion as a
"collateral attack" pursuant to Fed.R.Crim.Proc. 11(e) and 28 USC
§2255. Government argued no evidentiary hearing was required and a
certificate of appealability should not be issued.

    6. In plaintiff's motion, pre and post sentence, plaintiff reported
dental pain and a diminished mental capacity where he reported he has
been suffering from mental illness of PTSD for years.

    7. By the time plaintiff was sent to FCI Berlin NH, the dental pain had
worsened significantly. In addition it was determined a C-PAP machine

2

should be prescribed and as a result of multiple witnessed episodes between July and October 2022 of Apnea while asleep.

8. Despite numerous and reasonable request for treatment FCI Berlin, NH and FCI Fort Dix have intentionally refused to provide medical and mental care.

9. Plaintiff in fear of his life in the absence of the C-PAP machine on April 13, 2022 submitted a request for compassionate release to the Warden at FCI Berlin citing his age "62" underlying medical conditions and mental defect.

10. On April 19, 2022, the Warden denied the request making a determination that plaintiff in this case was ineligible for FSA credits and thus did not qualify for the 18th month rule and/or an earlier release date, all of which the courts now consider moot and resolved.

11. On August 18, 2022, plaintiff at FCI Berlin filed an Administrative Remedy, ID#: 1120828 discussing a medical a medical designation, application of FSA Time Credits, consideration to be transferred to home confinement pursuant to the CARES Act of 2020.

12. Plaintiff's request was denied despite multiple- comorbidities diagnosed by FCI Berlin, NH medical staff. Despite being upgraded to a level II, despite knowing of plaintiff's worsening symptoms defendant has failed to provide or ensure provisions of timely medical care.

13. Albeit, plaintiff's indifference claim is that intentional infliction of pain and emotional distress was a violation under the Eighth Amendment to the united States Constitution.

14. Plaintiff met and exceeded the burden of proof by using FCI Berlin, NH medical encounters that corroborate that plaintiff suffers from pre-diabetes, High Cholesterol, Hypertension at stage 3 level, a BMI reading of 35, enlarged prostate, late Osteoporosis, Lipoma, Sleep Apnea, Dental infection, loss of hearing in his left ear and multiple surgeries needed, not withstanding mental health under substandard conditions.

Plaintiff was made aware of a transfer that was forthcoming, due to alarming medical encounters conducted that suggested FCI Berlin was not equipped to handle plaintiff's medical needs.

Upon learning of transfer plaintiff made a request for copies of medical encounters between July through October 2022.

Despite promises made by an Assistant Warden and the medical unit manager, these encounters were deliberately not made available. The acquiescence of defendant and the district court to not demand production of encounters reflects the collusion.

These encounters clearly reflect plaintiff's Hypertension at a stage "3" level (which is the most severe of high blood pressure readings, which usually means immediate attention by a doctor or healthcare professional, as it is a 911 emergency level.) that is life threatening.

Hypertension stage 3 is a value over 189/110. Plaintiff's encounters from August 2022 to October 2022 fell in this range. Plaintiff's vulnerabilities and high risk is further corroborated by FCI Berlin, NH, who sponsored a telemedicine cardiology consultation that reflected plaintiff is indeed high risk.

telemedicine cardiology consultation that reflected plaintiff is indeed high risk

A study conducted by the American College of Cardiology (ACC) using their ASCD Risk Calculator and/or Estimator, provided a conclusionary mathematical assessment. Categorization (used by the ACC); typically a risk reading, ranging from a 5% for Low Risk, 7.4% for intermediate, with high risk at 20% or above. The optimal ASCD reading is 6.3%. Plaintiff's reading came in at 26.2% - A study already submitted to the District Court for Compassionate Release which becomes dispostiv.

Plaintiff reached FCI Fort Dix in the latter part of 2022 and immediately became endangered by the same level and inhumane conditions of confinement which have justifiably unleashed the indignation and scrutiny of Congress and the Attorney Generals Office over the past three years.

Fort Dix has not improved, and there is no sign that the conditions will improve any time soon. Plaintiff is left helpless, as the BOP continues to fail him, after the District Court entrusted him to this care.

Plaintiff upon arriving at Fort Dix he routinely requested medical attention (including a C-PAP Machine) after developing Bronchial symptoms of violent coughing with trouble breathing. On all of his attempts to seek help from Fort Dix medical, plaintiff's cries went unanswered.

FCI Fort Dix has forced ~~pro se~~ plaintiff into a drug infested facility (Fentanyl is present), with poor ventilation, where he has trouble breathing.

Plaintiff is thrust into an unclean living environment, with literally no sanitation equipment such as soap in the bathroom dispensers and no means to socially distance from inmates that are clearly sick.

Moreover, plaintiff is confined to quarters approximately 400 sq ft. with 6 bunk beds and/or 12 inmates crammed together.

Facts II: DAMAGES AND RELIEF REQUESTED

Plaintiff respectfully request the following relief:

A. Compensatory damages against the United States in the amount of $300,000.

B. Presumed damages by the Court.

C. Injunctive relief directing defendant to immediately treat and approve surgery for his dental, mental, and other maladies in his foot, back and ears.

D. In the event Plaintiff is released from captivity before this case is resolved, he is requesting that the United States be held responsible for all costs related to this necessary surgery to include but not be limited to all travel costs, physical pain plaintiff is suffering.

E. An immediate hearing due to the severe physical pain plaintiff is suffering.

F. Declaratory relief.

Facts III: Dental, Mental

Damages and relief requested:

Plaintiff respectfully requests the following relief and actions:

A. Compensatory damages in the amount of cost of surgery and travel related expenses estimated to be $200,000.

B. Presumed damages TBD by the Court.

C. In the event plaintiff is released from captivity before the BOP performs surgery this Court should hold the United States responsible for all costs related to this surgery including travel costs and post-surgery rehabilitation.

D. An immediate hearing due to the severe nature of plaintiff's injuries.

E. For the Court of the United States to file a reply immediately.

F. Declatory relief.

G. Any other relief this Court deems just and equitable.

H. Plaintiff seeks injunctive relief immediately ordering the BOP/United States of America to diagnose and treat and approve surgery to address the medical issues outlined herewithin.

JURISDICTION:

The Court has jurisdiction pursuant to the following:

    A. The California Human Rights Act

    B. California Law

    C. 42 USC §§1331; 1367

    D. The Federal Tort Claims Act

    E. Supplemental Jurisdiction 28 USC §1367

    F. The Declaratory Judgment Act (California & Federal).

As a result of the above United States is guilty of medical malpractice, intentional and negligent infliction of emotional distress, negligence, gross negligence, abuse of process, causing plaintiff severe mental anguish.

ACKNOWLEDGMENT

By presenting this form to the Court, I certify tha to the best of my knowledge, information and belief, the following statements are true. I understand that if a statement is not true, the Court can order to penalize me (such as to pay money to the other party, pay court costs, and/or other penalties.).

1. The information I included in this form is based on facts supported by existing law.

2. I am not presenting this form for any improper purpose. I am not using this form:

   a. Harass anyone;

   b. Cause unnecessary delay in the case; or

   c. Needlessly increase the cost of litigation.

3. No judicial has said I am a frivolous litigant.

4. There is no court saying I cannot serve or file this form.

5. This form does not contain any "restricted identifiers" or confidential information as defined in Rule 11 of the General Rules of Practice https://www.revisor.ca.gov/rules/go/id/11/ or the Rules of Public Access to Records of the Judicial Branch.

6. If I need to file "restricted indentifiers", confidential documents, I will use form 11.1 and/or Form 11.2, as required by Rule 11.

10/20/2023
Date

_____
Signature

Name:

Address:

1

EXHIBITS


Note: Emails enclosed were never answered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA SOUTHERN DISTRICT,
Santa Ana
CRIMINAL DOCKET FOR CASE NO. cr-16-69-JVS
HON. JAMES V. SELNA PRESIDING

BY LOOKING AT THE DOCKET WE BECOME FREE FROM AMBIGUITY AND EXPRESSED PLAINLY,
CLERLY AND DISTINCTLY THE LEGISLATIVE INTENT FROM THE UNDERLYING RECORD.

| Date | # | |
|---|---|---|
| | | I am the Defendant in this case and respectfully submit this affidavit in support of reduction of sentence. The errors in which I base my motion of sentence from said judgment are as follows: |
| 5/13/2016 | 4 | Did the District Court violate Mr. Suite's due process and Sixth Amendment rights? In letters sent to attorneys and the Court pro se motions I the defendant - challenged the initial detention claiming it was a due process and Sixth Amendment violation. |
| 5/13/2016 | 4 | First Argument was, federal public defender did not satisfy the Sixth Amendment's requirement stating initial detention hearing was akin to a lynching, definition of which is "trial by mob". Defendant's rights were violated when he was not allowed a phone call despite - retaining counsel prior to arrest. FPD was never hired and was told defendant will await his privately retained counsel. FPD and the courts proceeded anyway, creating an unlevel playing field and/or prejudice. Assigning a "FPD" who happened to be at the water fountain that day does not satisfy the Sixth Amendment and Constitutional representation. Moreover, FPD received phone calls from attorney and did not inform the court defendant was under representation. |
| 5/25/2016 | 11 | Notice of Appearance William Koosny privately retained. |
| 6/20/2016 | 19 | Minutes of past indictment arraignment jury trial set for 7/19/2016. Defendant enters not guilty plea. Indictment took 6 weeks after impermissable hold. |
| 6/20/2016 | | Bond hearing set, Attorney William Koosny passed away 48 hours before bond hearing. |
| 6/21/2016 | 22 | NOTICE OF SUBSTITUTION of 2nd privately retained attorney Correen Ferentino. Attorney William Koosny terminated. |
| 6/24/2016 | 26 | Application for bond filed. Bond hearing set for 6/30/2016 before Magistrate Judge Karen E. Scott. Court should take notice this hearing was set 6 days from retaining counsel and was submitted as proof defendant was seeking a jab into the system aggressively trying to get before the court. This goes to assertion of speedy rights, where in the Sixth Circuit "Request for Bond" is the - assertion of speedy rights. See #59. |

1

6/27/2016   27   Request for hearing was approved.

6/29/2016   29   The Court at request of Correen Ferrentino status conference
set before Judge James Selna without notice to defendant for
Thursday 6/30/2016 at 9:00 am. Order granted motion to withdraw
for good cause shown. The Court reappointed FPD. Entered
6/29/2016.

ARGUMENT         Defendant argued "The Court erred in granting motion to
withdraw. Defendant had never been before the Court prior and
had no one on his case thus was 'prejudiced!".

6/29/2016        For good cause shown: (Under Seal) Defendant subsequently
learned there was a conflict of interest and requested
Attorneys Reed and Robinson to file a Sixth Amendment violation
or abuse of discretion claim - in which they failed to do. To
date since defendant lost two private attorneys that prejudiced
his defense, defendant still contest conflict of interest.

6/29/2016        Attorney Ferrentino appeased defendant with false information
that he now qualifies for a panel attorney. Court declined to
appoint panel attorney and forced FPD upon defendant again for
the second time. The record reflects defendant, who has never
been before the Court prior, asked for a new appointment due to
ineffectiveness of FPD at the initial detention hearing - and
the Court refused. Even in light of losing two privately
retained attorneys (1) refund from first attorney William
Kopeny would take 5 years, for a refund from the bar. (2)
Forced to take out loans for 3rd retention of defense attorney
caused harm.

ARGUMENT         Mr. Suite claimed ineffectiveness of counsel in violation of
his Sixth Amendment rights notwithstanding abuse of discretion.
Despite showing good cause and his ability to retain counsel,
FPD was forced upon him for the second time and immediately was
prejudiced again by FPD not making herself available to
defendant because she was going on vacation thus, defendant had
to continue on with an impermissable hold that was
unconstitutional for another three plus weeks, bringing
defendant to his third month without a bond hearing and/or a
simple jab into the system.

6/30/2016 **Discussion II** Before appointment of FPD, I was brought before the
Court "status conference" without representation since
the Court - approved withdrawal of privately retained
counsel. This was not a frivolous claim because the
Court caused me to waive my speedy trial rights
without representation. Thus defendant suffered
prejudice and harm that the speedy trial rights were
designed to prevent. 1. Undue and oppressive
incarceration prior to trial; 2. to minimize anxiety
and concern accompanying public accusation and; 3. to
limit the possibilities that long delay will impair
the ability of the accused to defend himself.

**Discussion III** Because impairment of the defense undermines the fairness of
the system of determining guilt or innocence, it is the most
serious form of prejudice. Defendant argued he suffered
prejudice from having spent 12 months in jail, (a.i. having to
compel discovery from attorney). The Court is well aware of the
discovery abuses. Despite compelling all notes and
investigation reports from attorney, defendant - never received
full discovery - which was brought before this Court prior to
trial date.

7/18/2016  36    FPD who was forced upon this defendant for the second time
cancelled bond hearing and my speedy rights, an action that
lead to several more weeks of delay. Cancellation was contrary
to #22 and #26 offered as proof this defendant was aggressively
asserting his speedy trial rights and for the second time FPD
impeded any progress that could have been made.

8/23/2016  38    Request to substitute privately obtained Attorney Kenneth Reed.
Once again we see defendant asserted his speedy trial rights as
application for reconsideration filed within seven days of
hiring upon request of defendant, contrary to no filings done
by FPD Andrea Jacobs who had to go on vacation. 30+ days later
FPD terminated as to Rawls Gerard Suite and was rendered for
the second time ineffective. On 6/30/2016 - defendant discussed
he was brought before the Court without - representation as the
Court:

1. refused to appoint panel attorney despite defendant losing
two privately retained attorneys through no fault of his own;
2. Here on the record, defendant went on record before the
Court asked for a different - appointment based on the
demonstration of ineffectiveness by FPD at the initial
detention hearing, loss of attorney by death and loss of second
attorney through bogus conflict of interest.

8/30/2016  42    Application for review consideration of order setting
conditions of release, vacating detention. Application filed by
Rawls Gerard Suite, application set for 9/1/2016.

9/1/2016   46    Bond hearing denied.

9/1/2016  **Analysis** I the defendant in this case alleged Attorney Kenneth Reed
committed two Constitutional violations that undermined my
defense. First counsel cajoled this defendant to take the
stand, a defendant who has <u>never</u> been before the Court
prior. See Document 121: p.50-51. Declaration was not signed
and was offered as proof to support ineffective assistance
claim. Second Counsel did not ask the Court to remove
shackles despite this being a white collar and/or pedestrian
crime. This was not a gun case, drug case, but rather a
paper case "white collar crime case", thus I argued
prejudice. As this purpose of full shackled or restraint was
unconstitutional for a non-violent crime.

3

10/27/2016   59   Order to continue trial from November 9 to February 7, 2016, filed by plaintiff for no apparent reason, a continuation set against the wishes of this defendant. Kenneth Reed torn between appointments sponsored unauthorized continuation thus, Defendant was prejudiced.

11/15/2016   59   Application for reconsideration filed. Application set for hearing on 12/2/2016. Defendant went from 5 day filings to 90 day filing and the Court rejects this as a possibility of proof that counsel was ineffective.

11/15/2016   **Analysis**   From September 1st bond hearing to November 15th, 2016. Attorney Kenneth Reed established a breach of contract and a conflict of interest by refusing to make himself available and file a reconsideration hearing before the Honorable Judge Selna in the District Court. The only reason, November 15th filing took place is counsel called my fiance by accident (asking for the wrong client) and was asked, "why he did not make himself available." Defendant faced frustrating barriers as he lost 10 weeks and was hindered, prevented from exercising a Constitutional right to go to trial on November 15th and/or have a simple reconsideration hearing. Defendant went from 4-5 day filings to 90 days. Now, eight months removed from being held impermissible and unconstitutionally where I couldn't get a job into the system, counsel Reed refused to file a dismissal of this case consistent with subsequent Trial Attorney Edward Robinson. Thus, amounting to a due process violation that should not stale over time.

12/2/2016   Attorney Kenneth Reed terminated for his refusal to set a reconsideration hearing. Defendant in subsequent complaints and 2255 Appeal, trumpeted attorney performance fell below an objective standard of reasonableness amounting to a Constitutional deprivation of his rights. Court responded by not sending a copy of ineffective claim to Attorney Kenneth Reed thus, the Courts did not meet the level of defendant's claim. a due process violation - and/or a deficient performance that clearly caused prejudice. I argued I never - received the presumption of innocence which was believed to be tied to a racial animus, as white unindicted co-conspirator similarly situated was not indicted. Moreover, I was punished before adjudication. Even with $700,000 of appraised properties submitted to his Court (by a judge in a sealed v) the ques_____y po ___ ack d___ ___ w___ v all w__ this defendant to help attorney's with this case, (e.g. The $85,000 plus refunded to clients before discovery was found by defendant and not attorneys, and ultimately credited by the Government as they conceded mistakes and multiple errors. Defendant argued if the Government omitted multiple repayments, it likely omitted others. Thus, the Court should have applied 2 levels lower for loss amount and/or granted defendant's request

4

for $5000 to aid in forensic audit request made by defendant. Despite discrepancies, the Court is aware a close case should be determined in defendant's favor (e.g. Loss ultimately found by this District Court, $1,570,000, fell very close to the Guideline's breakpoint of $1.5 million.). The Court clearly erred in finding a loss of more than 1.5 million.

1/09/2017   66   Notice of appearance of Attorney Edward Robinson (privately retained, by loans taken out by family including one citizen taking a loan out against her vehicle that eventually was defaulted on thus, injury.)

1/09/2017   66   Bail review shceduled aggressively on calendar within 4 days or an event in tension with the disappearing act by counsel Kenneth Reed that took 75 days to file a reconsideration hearing after September 1st bond hearing before Magistrate, moreover, failed to answer phone or visit his client.

1/10/2017   68   Plaintiff files continuation of trial from February 7, 2017 to June 6, 2017.

1/13/2017   69   Order by Judge continuing trial date pursuant to Speedy Trial Act.

1/13/2017   70   The Court denies the defendant application for reconsideration of bail. Docket No. 121, p.37-pp.30-31. Defendant believes this was because of bad lawyering and/or ineffectiveness of counsel.

Analysis    Despite an excellent bond package, tremendous support from family and friends, (a full gallery at every hearing) Strong ties to the community for over 40 years, in the same residence for 14 years, a remote criminal history - and multiple properties proffered totaling $700,000 in equity appraised before this Court, notwithstanding prima facie evidence captured in the indictment that on it's face showed $600,000 invested on behalf of partnership causing trial attorney to state in his draft the - following: "In the parlance of our trade **this was not a straight rip-off.**" Notwithstanding a private business, run by a private citizen was also proffered to incentify courts to grant bail. (Personal guarantee of which the Government shut down - resulting in prejudice and a racial animus.).

1/19/2017   71   NOTICE OF APPEAL

3/01/2017   75   District Court's pre-trial detention affirmed. Docket No. 121 p.34. Again based on bad lawyering and ineffectiveness of counsel.

4/13/2017   77   Motion to Strike Surplusage From Indictment. Court allowed a constructive amendment, I the defendant in this case argued to move all the evidence (see attachment 2) set forth in the latter, evidence believed to be irrelevant, not going to a material point. Arguing it creates the impermissible

probability that a jury could convict based on character as opposed to what the Government could prove in their indictment.

Discussion        Trial attorney in selling the open plea on the eve of trial clearly states in a letter submitted to this Court the following: "concerning the use of this evidence as relevant conduct if you are convicted. Most of this evidence would likely not be relevant conduct as it is likely not closely enough connected to the Court of conviction. With that the Government would have a difficult time using the evidence to upwardly adjust your guideline loss calculation, number of victims, etc." Trial attorney impacted the ultimate conclusion whereby, plea was involuntary not knowing and/or intelligent. Had I known this supposed mini-trial would not give me an opportunity to be heard I would not have pled.

5/19/2017  87  Status conference held before the Honorable James V. Selina as to defendant "Rawls Gerard Suits," Here the Court directs the US Marshall Office to investigate (the dental needs of defendant who lost his front tooth while in BOP custody) and report back to the Court. The needs and actions being taken as there were concerns of being prejudiced at trial. With a deliberate indifference marshals overrode any dental care.
Secondly, at this status conference in response to letter sent to the Hon. Judge V. Selma that the discovery was being withheld from defendant by trial attorney "Edward Robinson" leading up to trial. The Court finally addresses discovery, order discovery. Prejudice is found in Court abusing his discretion by giving Defendant only two weeks from trial to review late discovery (80,000 pages of discovery), thus defendant made a claim of prejudice, due process violation and ineffective assistance of counsel.
Thirdly: Court confirms this matter will go to trial in two weeks, scheduled for June 6, 2017. Defendant given only two weeks to review 85,000 pages of discovery, Court abused it's discretion in not holding trial attorney accountable and/or not rendering him Constitutionally ineffective. The facts are far from ambiguity  and clearly showed prejudice, clearly showed defendant met the burden of proof, clearly shows trial attorney was belied by the record which clearly showed he did not vet the discovery obviously the record is unequivocally void of ambiguity, and shows trial attorney did not negotiate a plea. Moreover, failed to stipulate to a loss amount ("incompetency") failed to recognize (as a 20 year attorney veteran) that in a close case, any discrepancies should have been determined in this defendant's favor - United States v. Kilby, 443 F.3d 1135, 1139 (9th cir. 2006); rendering trial attorney ineffective, especially considering in trial attorney's draft, trial attorney  argued defendant should not be held responsible for the entire conspiratorial loss and that estimates should err on the conservative side. Trial attorney was well aware the estimate of loss was not conservative yet was nowhere to be found on conducting any independent review despite plenty of time on this case to do so - and/or stipulating to a loss

amount. Trial attorney's investigator was able to identify (in which Government concedes) $700,000 deposited into same account as investors through 2012-2014 and identified another $350,000 deposited in 2015 from honest services not taking into account, casting doubt on misscorporation of funds. Finally, Defendant argued attorney was ineffective and the Court abused it's discretion in increasing the offense level by 16 instead of 14 points.

Leaving defendant to argue pre-post sentence that "He had no confidence in the outcome." and trial attorney is belied by the record, if he did not have and/or review the late discovery with his client how then could he defend him. e.g. doing the job of trial attorney, I the defendant identified multiple mistakes and errors in the Government's loss calculation that was submitted to this Court, argued the loss amount was overstated thus requested a forensic audit whereby, I asked the Court for $5000 assistance in completing audit, asked trial attorney to follow through with a formal request and was met with frustrating barriers - rendering trial counsel ineffective. Through late discovery with two weeks to review 80,000 pages of discovery I was able to find $100,000 in errors in which the Government conceded and gave immediate credit on; giving credence to the fact that, "if there were multiple errors, omitted payments, these could have been more." Giving credence to the fact that defendant was on the cusp of the loss at which the Guidelines range increases (14 to 16 levels) not all monies returned prior to discovery were shown in the Government's bank record analysis. Thus, Defendant argued Court should have applied the lower adjustment of 14 levels for the loss of up to $1.5 million.

6/5/2017          Defendant plead guilty to an open plea that was not knowing and/or intelligent. At no time did defendant ever think he was pleading to the indictment. The parties agreed to a factual basis (one sheet of paper), which was read into the record - ER 427-30; ER 430. In particular, I admitted to making one false statement that - trial attorney stated does not go to a material fact, thus disguised his true identity.

6/5/2017 Discussion After asserting I did not use an alias supported by notebook "I was carrying at the time of arrest" prosecutor suppressed this - evidence that carried a reliable level of - indicia, I was convinced by trial attorney that it does not go to a material fact and relied on the strength of his word. The court at this admission up and the government presented a heavily - lawyered version of historical events - unadjudicated issues, amounting to prosecutorial misconduct - as they lacked veracity, it simply was not true. In addition government trumpeted "This is what drove sentence a long history of prohibitions" to victims too so they can do the government's bidding thus, prosecutorial misconduct was present - yet ignored because untruth harmonized with prosecutor's lawyered version.

7

TRULiNCS 73499112 - SUITE, RAWLE GERARD - Unit: BER-A-B

-------------------------------------------------------------------------------------

FROM: 73499112
TO: Durity, Cheryl
SUBJECT: Draft. - just a test
DATE: 05/21/2022 06:49:56 AM


I asked for a bifurcated trial and or autonomy based on the fact I have been blocked, hindered and prevented from contesting
the government's allegations moreover had no confidence in the outcome therefore typed up a motion gave it to Trial Attorney
to submit to the court and set a feretta hearing and just in case Attorney slacked in submitting request I cc
a copy to the honorable district Judge attaching communication, emails showing frustrating barriers I was facing that included
discovery abuses ( This was a paper case not a drug case and or case of violence.) whereby, discovery was not received 5
weeks removed from trial, I demonstrated not only xyz but xyz..., What more is a defendant to do?

discovery was withheld leading up to trial, but, also
demands were made for all notes and Communication
from trial Attorney Also was not in production—

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-Q-C

---------------------------------------------------------------------------------------------------

FROM: 73499112
TO: Health Services
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-R-C
DATE: 11/06/2022 01:34:57 PM

To: Dental
Inmate Work Assignment: health services

I have a throbbing pain, also I have been on the list for a flipper and A cleaning FOR well over two-three years.

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-Q-C

--------------------------------------------------------------------------------

FROM: 73499112
TO: Dental
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-T-C
DATE: 12/06/2022 10:14:38 AM

To: Dental
Inmate Work Assignment: Demtal Emergency

I am in severe pain, I emailed upon arrival {30 day's ago} my issue of pain I also filled out a cop out two weeks ago which resulted in 600 mg of pain pills which i appreciated however, I am still in pain and have lost another tooth that has exacerbated my pain and now is triggerring nerve sensitivity near past root canal which is concerning. Help!

Lastly, I have been on a phantom waiting list for a flipper well over 3 years, I think it's time as i have lost 2 frontals and a third is also in pain and looks like it may be next...

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-Q-C

----------------------------------------------------------------------------------------------

FROM: 73499112
TO: Dental
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-T-C
DATE: 11/30/2022 09:20:05 AM

To: Dental/Health Services
Inmate Work Assignment: Dental Issue

On November 2nd, and 5th I have reported severe dental pain, losing another tooth upon arrival, I requested the missing IP
Brophin perscribed for multiple pain issues from dental to late osteoporosis, I also gave notice that I have been on a waiting list
for over three years for a flipper and cleaning due to injury that occurred in bop custody/

30 day's later I have not heard from anyone. again I am in severe pain.

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-Q-C

-----------------------------------------------------------------------------------------------------

FROM: 73499112
TO: Warden
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-T-C
DATE: 11/26/2022 05:43:06 PM

To: Warden.
Inmate Work Assignment: Quarantined

Upon arriving At Ft dix 28 day's ago, despite being fully vaccinated. {easily verified by Ms. Becker and or bennett in health services.} I got stuck and penalized for being vaccined because I came in at 5:00 -the end of someone's shift.

I have been quarantined in a made shift unit without any communication, and or ability to self care. I have sent out 14 email request... addressing my missing pills. underlying medical conditions {which is a level II} accompanied by Hyper Tension, high cholesterol, obesity, mental care, and other medical issues and have not received any response whatsoever, as this BOP Facility inadvertently or not has become indifferent to my medical care. I'm sure that changes once we get out of here but in the interim we are suffering under substandard conditions. .

I am unable to self care, trapped in a substandard unit that denies me basic neccesities - even something as little as 1 hour a day of sunlight, fresh air, and ability to excercise.

In addition We have gone back in time as we sit around every day watching silent movies as the T.V doesn't work. (Sharing 1 computer among 28 people. we are going a bit stir crazy and would appreciate your intervention.

Lastly, One of the safegurads we have is Our case manager has to see us in 28 days, even this has not been complied with--- as "Case Manager sent a thrid party substitute to address issues that have gone unaddressed for 30 days. putting in place deniability, basically resetting us into quarantine for up to another 28 days. this is unfair.

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-Q-C

---------------------------------------------------------------------------------------------------

FROM: 73499112
TO: Health Services
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-Q-C
DATE: 12/28/2022 01:40:36 PM

To: MEDICAL
Inmate Work Assignment: MEDICAL

i HAVE YET TO RECEIVE MY sLEEP APNIA MACHINE GOING ON 90+DAY'S, iN ADDITION I HAVE BEEN PERSCRIBED
PSCHE MEDS AND HAVE YET TO RECEIVE SICE ARRIVING HERE IN oCTOBER...

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-Q-C

-----------------------------------------------------------------------------------------------------

FROM: 73499112
TO: Case Management Coordinator
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-T-C
DATE: 12/02/2022 01:47:37 PM

To: case nanager
Inmate Work Assignment: case manager

No they have not, in addition, my dental pain jas worsened and is climbing to emergency./just got some asperin- Lost tooth,
nerve pain, hoping for no root canal.... been on the list with no attention for 3+ years, 3+weeks here. need dental care, flipper
etc.
-----Case Management Coordinator on 12/2/2022 1:17 PM wrote:

>
Have these issues been addressed?

_____
From: ~^! SUITE, ~^!RAWLE GERARD <73499112@inmatemessage.com>
Sent: Thursday, November 3, 2022 8:53 PM
To: FTD-InmateToCMC (BOP) >
Subject: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-R-C

To: case nanager
Inmate Work Assignment: case manager

I need to me moved to my unit, I am Fully facinated and have mailouts under deadline- I need to send out to the court, print-
outs/ to print. My custody level is 6 or lower and my underlying medical conditions needs to be addressed.
Thanks...

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

-------------------------------------------------------------------------------------------------------

FROM: 73499112
TO: AW Programs
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-Q-C
DATE: 05/05/2023 12:22:59 PM

To: Mr. Gupiati
Inmate Work Assignment: BP -9

I SUBMITTED BOTH A  BP 8 & 9 ON MARCH 7TH, 2023  AND HAVE ENCOUNTERED FRUSTRATING BARRIERS.

First BP -8 Formally requested change in ny First Step Act eligibility from ineligible to eligible due to not having a detainer or
final order.

Notwith-standing new policy has made it moot by the courts, Thus credit should have been applied.

Lastly; I have also requested a new contract to take me out of FRP status and have faced delays.

The problem is Ms. Kay and Mori lost form submitted on March 6th, and requested a new one which was done 3 weeks ago, I
am now told to wait untill team meeting coming up thiis month.

Second I requested the Cares Act and or elderly offenders act since January of this year and submitted a BP-9 Oon March 7th.
had a meeting with Mr.Byrd in April that revealed if i have not heard from the warden by now  it probably was denied. I
subsequently asked for a copy from ms. Kay and was informed she does not have a copy go see mori which uncovered it was
missing and not in circulation and now would have to wait for answer om BP-8 Before resubmitting a BP 9/ aS You are well
aware request doer the cares act expires next week thus frustrated.

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

------------------------------------------------------------------------------------------------

FROM: 73499112
TO: AW Programs
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-Q-C
DATE: 05/08/2023 03:07:57 PM

To: AW
Inmate Work Assignment: AW

I have requested since October 2022 (my first Team meeting) a new FRP contract  based on A 1000% increase in my FRP
paymrent. Something not supported by Judgment and comitment from the bench copy of which has not been provided.
Moreover  My kids . family are not responsible for my restituion payments.

I aggressively since January requested not only a FRP Resolution but also requested the home care act  and was told i do not
qualify due to detainer and now switched over to FRP issue. Exhausting my remdies I submitted a BP-9 on march 7th, had
conversations with Mr. Byrd who instead of drawing up a new contract advised me that with a detainer and frp refusal await
team.

All of March and April Ms. Kay conveiently also did not provide a new contract and or a answer to bp-8 and complained the bp-9
could not be found. Finally I receive an answer to BP-8 THAT TOOK US IN A CIRCLE.

A,) NEW FRP CONTRACT IS REQUESTED, I should not have to await a mysterious date that is not provided ( it is not top
secret ) despite the date would be trapped and known in the computer data report. Counselers Indifference to inmate need is
injurious and liable.  Counseler refuses to proffer new contract deliberately waiting for expiratuin of cares axt to occur. totally
unnescessary had counseler responded to numerous request.

B, New Nop Policy emtitles me to credits.

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

-------------------------------------------------------------------------------------------------------------

FROM: 73499112
TO: Warden
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-Q-C
DATE: 05/11/2023 01:44:46 PM

To: Warden Knoght
Inmate Work Assignment: FRP

Today is the expiration of the care act, Your staff have given inmates a reflex response of that ship has sailed not only today but even as recently as ;ast week and Satyrday Ms. Kaye had ststed "the ship has sailed." despite putting up frustrating barriers to resolving issues through remedies dispite deliberate indifference e.g. not having open house, refusing to issue a new contract for FRP, Refusing to accept payment and or allow inmate to come off frp not withstanding medical neglect is an eight amendment violation.

 I have been transferred to this facility since October 2022 because Berlin N.H. upgraded me to a Level II and have now had any of my underlying conditions addressed,  despite Berlin N.H. using cardiology college assesment that determined this inmate to be high risk, despite aspirin given to treat dental infection amounting to negligence. C-Pap has been on it's way since October, muscle spamsm, Hernia, enlarged prostrate , late osteperosis not addressed

In conclusion this inmate has been blocked, hindered, and prevented from the cares act, medical attention.and the elderly offenders act BP=8 AND 9 submitted was lost causing further delays as i have the burden of re-submtting.

I have re-submitted a BP-8 for the home confinement today the 11th, as your staff has been real ggood at not making themselves available, as I write this I hope open house is open at 1:30 so i can submit.   The cares act in compliance to the barriers I have faced and await team meeting to remedy credits that could have been completed much earlier.

TRULINCS 73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

---------------------------------------------------------------------------------------------------

FROM: 73499112
TO: Warden
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-Q-C
DATE: 05/11/2023 02:07:22 PM

To: warden
Inmate Work Assignment: OPEN House

For the record, Open House is closed /dark and conveintly did not open today, May 11th, 2023. Thus denying inmate the ability to exhaust his availale remedies and [lace BP-8 AND OR 9 IN ON TIME.. There is no doubt THIS IS Indifference and negligence there is no doubt it is present.

I can only pray you will give this consideration in ordering this inmate to be released under the elderly offenders act which per BOP Assesment has this inmate released February 2023 as 90% of sentence has been served.

My Father in Law is on his death bed and my partner has a big burden to carry alone, I am a Grandfather and I have experienced loved one's passing asl was not there. I have been a permanent resident of this great country for 54 years and request some consideration.

Thank You So Muxh...

Gerard Suite

TRULINCS 73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

------------------------------------------------------------------------------------------------------

FROM: 73499112
TO: Warden
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-Q-C
DATE: 05/15/2023 12:45:38 PM

To: wardin
Inmate Work Assignment: BP-8

Today May 15th. 2023 Open House Finally opened with Mr. Mongomery and Mr. Mory available. I attempted to submit a BP-8
RESPECTFULLY REQUESTING CONSIDERATION FOR A TRANSFER TO HOME CONFINEMENT FOR THE REMAINING
TIME OF MY CUSTODIAl SENTENCE PURSUANT TO THE CARES ACT INTO LAW MARCH OF 2020.

 AND WAS NOT ALLOWED AS I WAS TOSSED OUT OF MR. MONGOMERY'S OFFICE AND ALMOST GIVEN A SHOT FOR
ATTEMPTING TO TURNI IN  A COPY OF THE BP -8  I MADE AT THE LIBRARY AND NOT AN ORIGINAL BP-8.

 ALBEIT, THIS INMATE HAS BEEN BLOCKED, HINDERED AND PREVENTED FROM FILING THIS  BP-8 (See Other e-Mails)
AT AN EARLIER DATE, ALBEIT, THIS SHIP HAS SAILED, INMATE HEREBY IS REQUESTING  APPROVAL OF (either the
home confinement or THE ELDERLY'S OFFENDER ACT AS IT PERTAINS TO THIS INMATE and or any remedy this office
may see fit.

Respectfully;
R. G. Suite

TRULINCS 73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

--------------------------------------------------------------------------------------------------------

FROM: 73499112
TO: Warden
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-Q-C
DATE: 05/17/2023 03:28:38 PM

To: WARDIN
Inmate Work Assignment: TRANSFER

As per Mr. Montgomery I am to pack up and be prepared to move to the east side 7:30 Tomorrow Morning, When Asked why? I am told I do not have that right. I have not had any disciplinary infractions, I have been a model inmate attending bible studies and chapel services consistently staying in compliance not wanting to move to a more younger and agressive compund but understand I have no rights as it pertains to this matter.

This is subsequent to FILING A BP-8 AND 9 SEEKING TO COME OFF FRP, SEEKING TO RECEIVE MY FSA CREDITS AND CARES ACT (hOME cONFINEMENT CONSIDERATION.) OF WHICH i HAVE submitted yet have RECEIVED NO COPY OF A WRITTEN RESPONSE WHICH IS BOP Policy.

albeit, I have Team coming up this month no exact date has been given as i am subject to searching callouts. I don't know what I have done to provoke this transfer as it seems vindictive yet I have had no interaction with case managers, counselors except for attempts to excercise my rights via BP-8 Forms and emails that have been sent to the wardin which i am told doesn't have time to read BP-9'S And emails and BP-9's are answered by Case Manager; Miss Kay...

Nevertheless, I respectfully ask for assistance in exhausting my BOP rights receiving my FSA Credits, a NEW CONTRACT FOR FRP, and consideration for home cares act and OR the Elderly offenders act as it has been frutrating to submit forms because Open House is closed more than it is open which prevents  inmates from submitting forms on time,

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

----------------------------------------------------------------------------------------------------

FROM: 73499112
TO: AW Operations
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-F-C
DATE: 05/20/2023 03:53:05 PM

To: Mr. Guipiati
Inmate Work Assignment: frp

In reference to May 5th Grievences and or electronic request sent to you/ I have not heard from you nor have we resolved any
of the issues raised. Those issues were forwarded to the wardin about 4 or 5 times and to date i have not had any response.
This is consistent with several plus e-Mails sent in October 2022, Hard copies have not worked either as this inmate has
submitted several cop outs that have not been answered.

Please see May 5th email in regards to issues raised. I have expressed deliberate indifference from your staff here at FT Dix
who have blocked, prevented, and hindered me from turning in BP-8 (FSA Credits.) AND 9'S,(requesting cares act which has
conveintly expired and or elderly offenders act in which i have received no response) amd medical relief from several ailments.
it just seems a waste when there is no response.
.
 A staff that has not made themselves available by keeping doors locked and or not showing up for duty has found a solution to
my inquiries, Ship him to the east side, I have no complaints, writeups, infractions and am a low level inmate with 6 points
(Camp Points.) yet I am subject to substandard conditions that this compound is well aware of.

Upon arrival I waited along with several inmates for 1 hour plus only to have counselors providing no open house, day 2 there is
a sign posted with 5 names of counselors who will not be available till next week. I am hoping to have team and have these
issues addressed. Thanks...

i.e. FRP Status - NeW Contract,  FSA Credits, home detention, lack of response and or assistamce from counselor Mongomery,
Case Manger Ms. Kaye

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

--------------------------------------------------------------------------------

FROM: 73499112
TO: AW Operations
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-F-C
DATE: 05/23/2023 11:30:02 PM

To: mR. gUPTOATA
Inmate Work Assignment: SDA

please see previous e-Mails, I was moved to the west side on the 18th for no reason other than a deliberate attempt to block me from pursuing my BOP Rights and or exhausting my remedies. This is and was unprecedented as inmates are usually moved for infractions of some sought.

    Moreover  After waitng six months for team, Ms. Kaye has deliberately blocked, hindered, and prevented me from filing BP 8's, or writing a  New Contract for FRP which I have requested since my first team meeting in October 2022 followed up ny recent BP 8's and 9s 1st Quarter 2023. some of which were deliberately misplaced (Lost.)

I have faced frustrating barriers to the application of my FSA credits, getting the cares axt filed before expiration and the elderly offenders act. Now going on several days iver on the east side no one is responsive ir gere.

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

-------------------------------------------------------------------------------------------------------

FROM: 73499112
TO: AW Operations
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-F-C
DATE: 05/24/2023 12:06:06 PM

To: Mr. Gupiati
Inmate Work Assignment: TEAM MEETING RESET

i WAS TIMED OUT LAST NIGHT,

   I WANTED TO BRING TO YOUR ATTENTION THAT I HAVE BEEN HERE SINCE MAY 18TH ON AN UNPROVOKED
TRANSFER FROM THE WEST SIDE. uPON ARRIVAL I HAVE SOUGHT TO SEE YOUR COUNSELORS AND UNIT
MANAGERS AND NO ONE IS AVAILABLE, UNIT TEAM IS NOT HERE THUS ANY REMEDIES OR PROCEDURAL PROCESS
FOR INMATES ARE MOOT.

   Secondly I bumbed into Warden at chow and expressed I have sent him several emails of which he was not familiar however,
did instruct me to follow up with unit manager,

   As previously stated open house is closed, unit managers and counselors are not here, not in circulation. This is consistent
with the West Side. The unit team on both the West/East side has created frustrating barriers to exhausting any remedies. If I
am Missing something please let me know.

   I once again respectfully request a Team Meeting, The application of my FSA Rights, and the opportunity to turn in my BP 8th
that I typed up prior to expiration of the cares act-

   I FURTHER REQUEST AN ANSWER ON MY BP-9 THAT was submitted to the Warden On March 7TH, 2023. To date, I have
been given no response.

   PLEASE NOTE ; THE BP-9 Formally requested the Elderly Offenders Act to be applied to this inmate and or a formal
rejection of stated request.

Respectfully Submitted;
R.Gerard Suite.

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

---------------------------------------------------------------------------------------------------------

FROM: 73499112
TO: AW Programs
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-F-C
DATE: 05/24/2023 08:55:07 PM

To: MS.Smith
Inmate Work Assignment: FRP Request

Please note I have been transferred from the west side last thursday the 18th on the same day I was scelduled for Team. I
hereby request a reset ASAP.

  The issues before us is ...

 1. A New Contract is needed for FRP, Please note I started out with $25 a quarter and subsequently bumped up to $25 per
Month. upon arrival to ft Dix October 2022 new contract was recalculated to $250 per month pricing any reasonable way for me
to make that payment as I do not have a job to pay that amount.

    subsequent discussions with my unit team suggested a $100 might work and if I wait for the next team meeting we would
assess deposits and get this back to $25-$50 monthly or quarterly...I also presented receipts from the clerk of the court showing
i continurd to make my $25 payment to the court.

2nd. Once New contract is redone the application of my FSA cREDITS WOULD THEN BE APPLIED.

3rd, I also requested the elderly offenders act (and Cares Axt.) in October 2022 and here again formally through BP 9  in March.
please get me a response even if it's rejected by the warden, thanks.

Respectfully Yours,
R.GERARD SUITE

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: FTD-F-C

---------------------------------------------------------------------------------------------

FROM: 73499112
TO: AW Operations
SUBJECT: ***Request to Staff*** SUITE, RAWLE, Reg# 73499112, FTD-F-C
DATE: 05/30/2023 10:30:43 AM

To: Mr. Gupiatti
Inmate Work Assignment: FRP

May 30th, 2023 I Rawle Gerard Suite Finally saw Unit Manager Ms. Smith who has been in training for two weeks, A period
whereby I received an unprovoked transfer from the West Side to the east.  (on the day of my schelduled team Meeting).

  As you are well aware team meeting was set six months ago in the month of October 2022 where request was made for a new
contract for FRP as My $25 Per Quarter payment jumped to $250 per month which became punitive, something I could not
afford. I subsequently Made numerous request in the first quarter with Ms. Kay and her unit manager Mr. Palm for a new
contract but faced frustrating barriers and was told to await team meeting.

  I was finally schelduled for team on the 18th of May and was denied once again the opportunity for a new contract, Subsequent
BP8'S and 9'S were lost, refused and Several + e-Mails also went unanswered. It appears from meeting with Ms. Smith today
that her plate is full and she is overwhelmed as she stated she would not be able to read and or get to my email for another
month.

  I am begging for what is technically mine as counselors, unit managers  are not able to help.

Respectfully;
R. Gerard Suite

Mr. R. Gerard Suite
3141 Michelson, Unit 507
Irvine, ca 92612
Email:rawlesuite@gmail.com

May 14
, 2017

Judge James V. Selna
United States District Court Judge
Ronald Reagan Federal Court Building

411 Fourth STREET
Santa Ana, CA 92701-4597

Subject:       Notification Letter
               R. Gerard Suite
               Case Number: SA-CR-16-69-JVS

Dear Honorable Judge James Selma;

     The Reason for this letter is to notify the court that I have aggressively through my new attorney requested the 40,000 pages of discovery for the last 8+ Weeks and continue to be at a disadvantage. As of May 14, 2017 I have not received discovery. Again for the last eight weeks although prosecution is directly across the street, I've been told "the disk" is in the mail or its being copied and now the reason recently cited is confidential information has to be edited which I have no doubt that is true however it does make for an unfair proceeding to properly vet the discovery in a timely manner.

*We request that the court orders the Attorney's of the government to perform and complete this request so that we can proceed without further intervention.*

Respectfully Submitted,

R Gerard Suite
Defendant

## FSA Time Credit Assessment
Register Number:73499-112, Last Name:SUITE

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 73499-112 | Responsible Facility: FTD |
| Inmate Name | Assessment Date.....: 07-31-2023 |
|   Last.............: SUITE | Period Start/Stop...: 12-21-2018 to 07-31-2023 |
|   First............: RAWLE | Accrued Pgm Days....: 1342 |
|   Middle...........: GERARD | Disallowed Pgm Days.: 341 |
|   Suffix...........: | FTC Towards RRC/HC..: 265 |
| Gender.............: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 06-04-2018 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-21-2018 | 07-17-2019 | accrue | 208 |

  Accrued Pgm Days...: 208
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 60

------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 07-17-2019 | 03-26-2020 | accrue | 253 |

  Accrued Pgm Days...: 253
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 135

------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 03-26-2020 | 04-03-2020 | disallow | 8 |

  In SHU

| Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
| RVS | QTR | Z01-313LDS | 03-26-2020 | 1742 | 04-02-2020 | 1508 |

------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 04-03-2020 | 06-13-2022 | accrue | 801 |

  Accrued Pgm Days...: 801
  Carry Over Pgm Days: 11
  Time Credit Factor.: 15
  Time Credits.......: 405

------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 06-13-2022 | 07-12-2022 | disallow | 29 |

  In FRP refuse status

| Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
| BER | FRP | REFUSE | 06-13-2022 | 1503 | 07-11-2022 | 1228 |

---

TRULINCS  73499112 - SUITE, RAWLE GERARD - Unit: BER-A-B

-----------------------------------------------------------------------------------------------

FROM: 73499112
TO: Durity, Cheryl
SUBJECT: test-got to send to print
DATE: 05/10/2022 07:03:00 AM

AFADAVIT:

Relevant to a reduction of sentence  and or to assisit the court I RawlE Gereard Suite hereby declare that leading up to my sentence hearing I experienced intense pressure leading up to trial and was trying to assert some type of control  whereby, I wanted to be heard, I wanted due process, the Quid Pro Quo that induced the open plea. In allowing my emotions to take the best of me I did not take the path the court wanted.

Considering supplicant's first offer was 5-years and or that The District court valued Supplicant's crime at 87- Months before the consideration of any variances that included age, health, strong family support, loss caculation, charity, multiple causations, imperfect entrapment and criminal categorization, etc. Albeit, A variance was mandated,the district court rejected all variances and or mitigating factors that were present. Moreover The district court up the ante from 87 months to 120 months disentitling supplicant from -3 level for acceptance of responsibility based on a sheet of paper placed in front of supplicant at the time of sentencing that contained 32 investors that the court wanted defendant to take full responsibility for.

Defendant had a subjective intent tied to objective truth that mitigated against his culpability, the court understood this to be a joint undertaking and that other co schemer's drove the loss amount in questioned, Defendant argued pro-se prior to sentencing that he should be held responsible for a lessor amount specifically the victims he dealt with personally. therefore, the court asked a rhetorical question and was well aware that defendant cbjected to the PSR and the amount of investors he dealt with leading up to the sentence hearing.

The Supreme Court has rejected vindictive sentencing albeit, Defendant showed remorse and acceptance of responsibility he had trouble adopting the word fraud given that he, Collins  (unindicted co conspirator) and the company STA Opus LLC made a minimum effort at compliance they were not fearful of presenting there case before a Jury and or before the Honorable Judge Selna. "The Quid Pro Quo"" that induced the open plea. Defendant at all times had a good faith defense that wars  with the element of fraud, which is intent. with the prima facie evidence showing 40% of funds invested presumption of innocence should have been provoked.

the court increase from 87-months to 120 months was not the appropriate response. defendant should not have been penalized for objecting to the PSR and or possessing a subjective intent. Unfortunately Racial Discriminations does exist in the criminal justice system defendant argued a racial amicus existed as unindicted co conspirator who is white received the presumption of innocence and defendant who is black di not receive the presumption of innocence which is easily found in the denial of bail, defendant was charged with a 1.6mm Crime where the prima-facie evidence pointed to $600,000 invested and or refunded, a remote criminal history and an excellent Bail package of $600,000+ from friends and family to guarantee defendants presence back in Court moreover, character letters from Doctors, PHD'S, Attorney's, Cooks, Real Estate Agents, waiters, citizens of this great country had one common theme "Please allow defendant bail so he could assist on his case" The Court Rejected this request. What the citizens and family members were aware of, was that defendant's who are denied Bail are 4x likely to cop a plea which is what happened in this case. Defendant argued he was prejudiced as a result of the court's abuse of discretion that was tied to a racial amicus.

### CRIMINAL CATEGORIZATION OR INEFFECTIVE ASSISTANCE OF COUNSEL, DID THE COURT ERR?

Albeit, Trial Attorney made a conclusionary statement "criminal category I is the appropriate application" The court did not find counsel credible, at least when it came to this categorization. Trial Attorney acquiescence to the burden of proof given to the defense tells a story. Nowhere in the record does it show Trial Attorney investigated defendants claim of only sixty served on previous felony, if true entitles defendant to s criminal category I.

was  The remedy here is for the Court to walk defendant's acceptance of responsibility back

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Rawle Gerard Suite
      Petitioner,

v.

United States of America
      Respondent.

Case No: 8:16-CR-00069-JVS

## MOTION TO SUPPLEMENT "PETITIONER'S REPLY TO

## GOVERNMENT'S RESPONSE TO PRO SE COMPASSIONATE RELEASE MOTION"

NOW COMES the Petitioner, Rawle Gerard Suite, Pro Se and unskilled in the area of law, respectfully moving this Court to consider additional information and updated facts in support of his request for Compassionate Release/Reduction in Sentence(CR/RIS) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) of the First Step Act(FSA), Pub. L. No. 115-391, 132 Stat 5194 (Dec. 21, 2018).

Petitioner hereby invokes the powers and protections of BOAG v. MACDOUGALL, 454 U.S. 364. 70 L.Ed.2D 551, 102 S. Ct. 700 (1982), which states that "Pleadings filed by individuals representing themselves are held to a less stringent standard then those prepared by attorneys."

## JURISDICTION

This Court is authorized to entertain this motion based on Title 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act (FSA), Pub. L. No.115-391, 132 stat. 5194 (Dec. 21, 2018).

allowed COVID-positive inmates to use the same common areas as noninfected
inmates; (3) did not provide inmates with personal protective equipment, like
mask or sanitizer, despite housing inmates in overcrowded facilities without
proper ventilation or sanitation; (4) did not consistently key COVID-positive
symptoms in inmate records; and (5) only enforced social distancing when
third-party auditors were present. The government has offered no evidence to
place the BOP's apparently negligent decisions in context.")

In the interest of justice, and in the interest of the most basic of
human rights, I challenge the government to provide evidence to this Court
that proves conditions at FCI Fort Dix have improved.

Pro Se Petitioner has not received adequate medical attention from
staff. petitioner now suffers from bouts of aggressive coughing and trouble
breathing. He is in need of a C-pap machine that has not been provided. His
mental health has been at issue, but has not been addressed by staff. He was
diagnosed with a dental infection, but was ineffectively treated with OTC
aspirin medicine. Petitioner has high cholesterol, hypertension, High BMI,
pre-diabetes, but he has not been seen by medical staff in over 6 months. Pro
Se. Petitioner's medical records have not been kept to accurately reflect his
medical condition. Which no only hurts this Courts review process, but it also
prevents any of Petitioner's future medical practitioners from having access
to a reliable history of medical condition.

Petitioner respectfully ask that this Court, in its consideration of
"extraordinary and compelling reasons" in his case, take special notice of the
very serious claims asserted by the middle district North Carolina Court when
Judge Eagles states that FCI Fort Dix "...did not consistently log COVID-

Petitioner has demonstrated that he has been unable to provide "self-care" with respect to his specific medical conditions, and with respect to taking the necessary precautions recommended for high-risk individuals of his age and with his underlying medical conditions. Petitioner suffers from bouts of aggressive coughing and trouble breathing. He is in need of a C-pap machine that has not provided. His mental health has been at issue, but has not been addressed by staff. petitioner has high cholesterol, hypertension, high BMI, pre-diabetes, but he has not been seen by medical staff in over 6 months.

The government's contention that "The mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify Compassionate Release", however true the statement may be, is a wholly ineffective and unpersuasive argument in the instant case.

First, in the case of the Petitioner, we are not dealing with the "mere possibility" that COVID "may" spread to FCI Fort Dix, but the "fatal reality" that the COVID pandemic has infected the entire Fort Dix, left death in its wake, and continues to fester and pose an imminent threat to Petitioner whose advanced age and poor health make him highly susceptible to sever reaction to infection.

Second, the government's analysis that the COVID pandemic poses an equal threat to people in and out of prison is not supported by any facts. Inmates like Pro Se Petitioner "are at the BOP's mercy while they are incarcerated. If the BOP does not provide or make available hand sanitizer or soap or masks, inmates cannot wash their hands or wear mask as recommended by the CDC. If the BOP places them in a space also occupied by inmates with

experience of the Petitioner constitutes extraordinary and compelling
circumstances under § 3582(c)(1)(A). See United States v. Chavis, 2021 U.S.
Dist. LEXIS 124143, 2021 WL 27846543, at *4 (noting that circumstances that
significantly increase the deterrent and punitive effect of a sentence can tip
the scale in favor of finding extraordinary and compelling circumstances).

## EXTRAORDINARY AND COMPELLING CIRCUMSTANCES

"General conditions that affect inmates indiscriminately throughout
the prison are insufficient to support an individual defendants claim for
Compassionate Release." United States v. Bolden, No. CR16-0320 RSM, 2020 U.S.
Dist. LEXIS 132716, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020). Courts
have routinely concluded that BOP lockdown "conditions, while challenging, do
not present an extraordinary and compelling reason to warrant early release"
United States v. Becerra, case No. 17 CR 1465-LAB;2021 U.S. Dist. LEXIS 24740,
2021 WL 461699, at *2 (S.D. Cal. Feb. 8, 2021). However, Pro Se Petitioner
represents a unique circumstance which far exceeds the "general conditions"
courts have grown accustomed to seeing.

Petitioner has shown that, throughout his time at Fort Dix, the
institutions staff, in reaction to its inability to properly manage 4,000 plus
inmates during a global pandemic, has violated his constitutional rights and
the Administrative Procedures Act. FCI Fort Dix refused Petitioner medical
attention while he experienced COVID symptoms, refused to accurately log his
medical request and condition, and refused to provide him with his accurate
and updated medical records.

Pro Se Petitioner respectfully ask that this Court recognize that
his issues are compound ones that together create "extraordinary and

124143, 2021 WL 2784653, at *4 (noting that circumstances that significantly increase the deterrent and punitive effect of a sentence can tip the scale in favor of finding extraordinary and compelling circumstances).

(2) Petitioner Eligible for FSA Time Credits

As it now stands, a relatively small reduction of time is all that is required to achieve immediate release in Petitioner's case. His projected release date is January of 2025, however, as a matter of law pursuant to the First Step Act, Petitioner is now eligible to receive 365 days in time credits. Timely application of these time credits would reduce his projected release date to approximately January 2024.

Counting the six months the average inmate is granted stay in the halfway house, Pro Se Petitioner should be released back into society as early as July of this year 2023, provided that the BOP properly execute its duty under the FSA.

If this Court would grant Petitioner's motion for Compassionate Release today, he would be back in society only 4-6 months ahead of the time he is already scheduled to be released by law under the FSA. For Pro Se Petitioner, this Court granting his release is worth while, no matter if it ultimately equates to a mere 4-6 month reduction in the time he is spending behind bars, because it is an escape from certain sickness, poor health, and potential death at the hands of FCI Fort Dix and COVID.

## CONCLUSION

Petitioner stresses the urgency of his current situation, and the need for this supplemental motion. He has demonstrated to this Court that, throughout his time at Fort Dix, the institution's staff has improperly

Petitioner's § 3553(a) Factors, viewed in light of the "extraordinary and compelling" circumstances described above, further weigh in the favor of granting his release. Petitioner lives under conditions where he is not only physically sick and isolated due to COVID and BOP mismanagement, but he lives under conditions where he is grossly unattended to and not provided the means to administer self-care. This type of suffering has heightened the punitive effect experienced by petitioner during his incarceration. Petitioner is also eligible for FSA time credits. This not only reduces his projected release date to January 2024, but it also serves as proof of Petitioner's past-conviction rehabilitation efforts in participating in evidence based recidivism reducing programming.

Lastly, granting Petitioner's motion will ultimately relieve him of approximately 4-6 months of the time he would otherwise spend behind bars when including FSA credits and half-way house into calculation. He has served 82 months of his 121 month sentence. Petitioner's request for release is a relatively small amount of time when compared to the time he has already served. When we add in the fact that Petitioner is a non-violent offender and elderly, a court decision to release him now in order to save him from the potentiality of sustaining even greater harm and injury is reasonable. For the foregoing reasons Petitioner ask that this Court GRANT his motion for Compassionate Release. IT IS SO PRAYED.

Respectfully Submitted,

Date: 12/30/23

X _____

Rawle Gerard Suite

Pro Se Petitioner

Pro Se Petitioner reached FCI Fort Dix in the later part of 2022 and instantly became endangered by the same cruel and inhumane conditions of confinement which have justifiably unleashed the indignation and scrutiny of Congress and the Attorney General's Office over the past three years. FCI Fort Dix has not improved, and there is no sign that the conditions will improve any time soon. Pro Se Petitioner is left helpless, as the BOP continues to fail him, after this Court entrusted him to their care.

Many federal courts have taken Judicial Notice of the atrocious conditions at FCI Fort Dix, and, in combination with some other variables, have considered the conditions here as a key and tipping factor in finding "extraordinary and compelling reasons" for release. (See United States v. generally Vega, 2020 U.S. Dist. LEXUS 226178, 2020 WL 2020 WL 7060153, at * noting the failure of the BOP to prevent and control a COVID-19 outbreak at FCI Fort Dix) (See also United States v. Tazewell, No. 07 CR 1035(RMB), 2021 U.S. Dist. LEXUS 99, 2021 WL 21980, at *4(S.D.N.Y. Jan. 3, 2021) Noting that "[c]ourts have increasingly recognized the significant rise and outbreak of COVID-19 at FCI Fort Dix in support of their determinations of Compassionate Release".).

The situation has not improved at Fort Dix. Since Petitioner has arrived at Fort Dix he has routinely requested medical attention after developing bronchial symptoms of violent coughing with trouble breathing. On all his attempts to seek help from Fort Dix medical Petitioner's cries went unanswered. Furthermore, Petitioner has requested for the BOP to edit and correct his medical records so that they accurately reflect his actual medical condition. He also asked that his medical records be promptly provided to him

## CONCLUSION

For each of the foregoing reasons, Petitioner respectfully requests that the Court grant this petition and the relief requested herein.

I, Rawle Gerard Suite, under penalty of perjury under the laws of the United States of America, hereby affirm that all statements herein are true and correct to the best of my knowledge. Pursuant to 28 U.S.C. § 1746.

Dated this 30th day of December, 2022, at FCI Fort Dix.

Respectfully Submitted,

Rawle Gerard Suite

Fed. Reg. No. 73499-112

Pro Se Petitioner

FCI Fort Dix

P.O. Box 2000

Joint Base MDL, NJ 08640

AFFIDAVIT IN SUPPORT OF MOTION
TO REDUCE SENTENCE PURSUANT TO
18 USC 3582(c)(1)(A)(i) AND THE
FACTORS SET FORTH IN 18 USC 3582(a)

My name is Rawle Gerard Suite. I am fully competent to make this
affidavit as I have personal knowledge of the facts stated in this
affidavit. To my knowledge, all of the facts stated in this affidavit are
true and correct.

Herein I respectfully and humbly submit a supplemental update to my
compassionate release motion that is pending before this Court.

I am seeking the Court to reduce my sentence to time served and or to
conform with the extraordinary and compelling circumstances already
established in previous motions - and now the most up-to-date picture
established herein.

To assist the Court I provide the most up to date Risk Assessment and/or
Computation Data Reports calculated by the BOP that support early and/or
immediate release.

I pray for relief based on the fact I have earned 365 days of FSA Time
Credits toward an early transfer to supervised release and 265 days towards
time in prerelease custody.

As it now stands, a relatively small reduction of time is all that is
required to achieve immediate release.

My projected release date is January of 2024. Timely application of these
time credits would reduce my projected release date to approximately January
2024[i]

Counting the six months average an inmate is usually granted in a halfway
house (RRC), this pro se petition could be granted release as early as July of
this year 2023, provided that the BOP properly execute its duty under the FSA.

Albeit, the BOP has jurisdiction over the Elderly Offenders Act, the Court should take notice from enclosed computation data sheet "provided by BOP's own calculations" Supplicant could have been released on February 1, 2023.

In addition, the US Sentencing Commission is likely to also approve two guidelines changes for retroactivity in the next months - and Congress seems to busy to try to veto any provision appropriately raised by the U.S. last April.                  Zero                  point                  change (new USSG 4c1.1) says defendants are eligible for a -2 level reduction, thus intervening changes of law and facts supports this motion.

2

RELEASE PLAN

Petitioner, upon his release, will live with his son, Anthony Suite, Connie Suite (wife) and his 2 grandsons, located at 3511 Fela Ave., Long Beach, CA 90808. Petitioner's son works for a staffing company and will have no problem placing petitioner. Petitioner can begin a 10-day quarantine period immediately, so as not to be a danger to the health of any person within his community.

Petitioner will abide by any and all national, state and local ordinances in California, which concern the Covid-19 virus to help contain and eliminate the pandemic.

Petitioner's financial needs will be accommodated through employment.

Additional factors for consideration:

Petitioner's medical conditions warrant granting this — Relief

BACKGROUND

On April 13, 2022, I the Defendant/Petitioner in this case submitted a request for compassionate release to the Warden at FCI Berlin, citing my "age (62), underlying medical conditions, sentencing disparity and mental defect".

On April 19, 2022, the Warden denied the request making a determination that I, the Petitioner in this case, was ineligible for FSA credits due to immigration and customs enforcement (ICE) detainer and being in FRP (Financial Responsibility Program) refusal. Moreover, the Warden took the incorrect position that Petitioner did not qualify for the 18 month rule and/or an earlier release date, all of which the courts now consider moot and/or resolved.

Subsequently, on August 18, 2022, at FCI Berlin, I filed administrative remedy ID Number 1130828, discussing a medical designation, application of FSA Time Credits, consideration to - transfer to home confinement for the remaining time on my custodial sentence pursuant to the Cares Act of 2020.

Noting; when former President Trump signed the Cares Act into law in March of 2020, he greatly augmented the power and authority of the Bureau of Prisons in an effort to move medically vulnerable inmates in the federal prison system to home confinement in order to drastically reduce the spread of the novel coronavirus (Covid-19). Once the Cares Act was signed into law then Attorney General William Barr, sent a memorandum to the Bureau of Prisons providing guidelines for prioritization of inmates being considered for release to home confinement[1] Over time it became apparent that those guidelines were to restricting and many inmates who should have been released under the Cares Act, languished in prison; many of whom caught Covid and died. In 2021 Attorney General Merrick Garland, provided new and updated guidelines for prioritizing the release of inmates under the Cares Act.

I the Defendant Rawle Gerard Suite qualify for release to home confinement under the Cares Act as follows:
1. Mr. Rawle Gerard Suite (Petitioner) has served over 50% of his sentence;
2[1] Petitioner is a cited at Low Risk of Recidivism;

( Continued on Back )

4

3. Petitioner is non-violent;

4. Petitioner's offense is not terrorist related;5. Petitioner has not received a disciplinary infraction within the past 12 months;

6. Petitioner's offense is not gang related;

7. Petitioner has a verifiable release plan;

8. Petitioner has a verifiable release address;

9. Petitioner has family support available upon release;

10. Petitioner has completed rehabilitative programming while incarcerated;

11. Petitioner has serious medical conditions, which elevates his risk of reinfection of Covid-19;

12. Petitioner does not have a sex offense.

DELIBERATE INDIFFERENCE

Petitioner's request for compassionate release due to heightened Covid-19 risk associated with his multiple comorbidities is ripe for judicial review and is properly before this Court.

Under the Eighth Amendment to the United States Constitution, "the BOP is required to provide prisoners with "reasonably adequate" medical care". Courts have defined adequate medical care as "services at a level reasonbly commensurate with modern medical science and of a quality acceptable with prudent professional standards, and at "a level of health services reasonably designed to meet routine and emergency medical, dental and psychological or psychiatric care".

First Petitioner reported among other things, FCI Fort Dix staff failed to provide proper medical care and treatment; extracting several indifference claims from the allegations updated in this supplemenal complaint.

The First Indifference claim alleged that Berlin, NH, FCI provided inadequate - medical care by failing to provide a C-PAP machine after diagnosis that Petitioner suffers from sleep deprivation.

Court should take note, a C-PAP machine insures oxygen flow during sleep thus, a C-PAP machine was prescribed by BOP medical facility Berlin NH, FCI and subsequently FCI Fort Dix, New Jersey - eleven months ago.

Court Should further recognize the sleep study was ordered by a BOP medical facility and as a result of multiple witnessed episodes of Apnea while asleep. Noting this goes beyond a "mere disagreement" with treatment plan -but, rather a wanton disregard and/or intentional refusal to provide care despite numerous and reasonable request for treatment. Herein, Petitioner has reason to fear for his life in absence of a C-PAP machine.

Despite this, Petitioner, being upgraded to a Level II, despite knowing of Petitioner's worsening symptoms, BOP has failed to provide or ensure the provision of timely medical care" Thus Petitioner asserts his rights under the First and Eighth Amendments. Allegations that amounted to a Constitutional

5

violation, given neither FCI Fort Dix New Jersey or FCI Berlin NH, provided
oxygen treatment in another form. Consequently, they had been deliberately
indifferent to Petitioner's medical needs, needs prescribed by there own hand
and/or architectual design. Petitioner does not merely disagree with the
treatment, he argues he has received no response, NO treatment for his sleep
apnea. FCI Berlin, NH, medical facility findings suggest Petitioner's sleep
apnea poses a serious risk to his health. The Court should recognize
Petitioner never demanded a C-PAP machine but rather is was prescribed by
medical staff after observation and clinical studies when conceding to other
medical vulnerabilities and/or conceding to third indifference claim listed
herein, it amounts to a "confession of liability".

Albeit, deliberate indifference requires proof that the medical staff
knew the prisoner had a serious medical condition with related risks but
nevertheless disregarded those risks. See Scinto v. Stanberry, 841 F.3d 219
(4th Cir.).

Petitioner's claims hinge on BOP's own medical reports and is sufficient
to hold FCI Berlin, NH, medical facility liable under the exacting
requirements of Montell v Dept. of Social Services, 436 US 658 (1978). It is
unequivocal staff were deliberately indifferent.

The Second Indifference claim is that the intentional infliction of pain
and emotional distress is evidenced by an intentional refusal to provide care,
delayed provision of medical treatment for non-medical reasons, denial of
prescribed medical treatment, denial of medical encounters between July
through August 2022, despite promises made by assistant Warden of FCI Berlin,
NH and his medical unit manager. These encounters were deliberately not made
available.

It is unequivocal had these encounters not reflected Petitioner's
hypertension at a stage "3" level (which is the most severe reading, and
usually means immediate attention by a doctor or health care professional is
needed as it is a 911 emergency that is life threatening and extraordinary and
compelling.), it would have been in production. The requirement for
hypertension stage 3 is a value over 189/110. Petitioner's encounters is from
August 22 - October 22 fell in this range. Not withstanding obesity reading at

all times of 35, which is considered by the CDC as high risk. ✓ ⟶

The Third Indifference claim alleges Petitioner suffers from the following medical conditions: Pre-Diabetes, High Cholesterol, Hypertension, a BMI reading of 35, enlarged prostate, late Osteoporosis, Lipoma, Dental infection (severe pain), muscle spasms, mental health, and substandard conditions and loss of hearing, which affects his equilibrium.

Petitioner's vulnerabilities and high risk is corroborated by BOP medical facility and/or medical records including a telemedicine cardiology consultation that reflected Petitioner is indeed considered a high risk.

What should be recognized is an individual assessment was conducted by a BOP medical facility (FCI Berlin, NH, medical department) utilizing the American College of Cardiology using there ASCD Risk Calculator and/or estimator.

The conclusionary mathematical assessment and/or categorization used by the American College of Cardiology is a risk reading ranging from a 5% for low risk assessment, 7.4% for intermediate risk, with high risk at 20%. Moreover, (the optimal ACVD reading is 6.3%) Petitioner's readings came in at 26.2%. A Medical Assessment Report is already before this Court.

The Fourth Indifference claim alleged the treatment of prisoners and the conditions under confinement are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v Mckinney, 509 US 25, 31, 113 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." Estelle v Gamble, 429 US 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

In all previous motions Petitioner challenged the conditions of confinement herein, he is confined to 12 to a room less than 500 sq ft, Living abiding in a mold infested facility where black mold is falling from the ceiling both in showers, bedrooms and hallways. Whereby he argues that if the buildings at FCI Fort Dix were inspected it would be condemned.

Confirmed by the building next to where Petitioner is housed states the following, "Danger", deteriorating building, hard hats are required advising not to walk on sidewalk below yet inmates walk by the building daily on there way to - programs, chow, or medical callouts. Without any implementation of the ordinance.

✳ Moreover, the facility is drug infested with groups clustered morning, noon and night - contributing to a vile order 24/7, which becomes troubling. Notwithstanding there is a lack of transparency as inmates are taken out on stretchers frequently due to drug overdoses, poor ventilation and/or succumbing to the virus, which becomes troubling and curious, a "theater of the absurd".

Since Booker, District Courts have recognized that unduly harsh conditions of confinement are valid reasons for a reduction of sentence. See US v Pressley 345 F.3d 1205-1119 (11th Cir 2003).

Petitioner is a 62 year old permanent resident [spanning 54 years] with a remote criminal history, whose medical vulnerabilities combined with service of most of his sentence under sub-standard conditions weighs in favor of immediate release.

The substandard conditions presented amounts to a human rights nightmare as Petitioner's incarceration has been more harsh than would be during "normal" times. Whereby Petitioner suffered restrictive conditions such as no movement, no sunlight for 2 plus years at an immigration facility called Reeves III Correctional Institute, a private contracted prison run by GEO. Petitioner argued, like a dog locked up for 2 years, he would lose his mind absent English speaking humans to talk to, more than 500 miles from home.

Here Petitioner found himself in Texas at a time of a statewide water emergency that deprived inmates of basic human necessities, porta-potties had to be brought in to the facility as inmates tracked in the snow and were given two small bottles of water to drink, brush teeth and take a bath. Moreover, with a combined capacity of 3763 immigration inmates in three sub-complexes was described as one of "America's 10 worst prisons by - Mother Jones Magazine

in pact because of medical neglect"

Things do not ~~state~~ STALE overtime, Petitioner is seeking fairness and relief challenging the provisions or lack thereof of medical, dental and mental health care tied to substanderd conditions that was in violation of petitioners Eight Amendment rights.

Eastern District of New York gave credence to harshness of incarceration caused by the pandemic; Amerson, 05-cr-0301 (JS), https://www.gordondefense.com/blog/compassionate release/extraordinacy compelling compassionate release/#ameson.

The Courts noted "a day spent in prison under extreme lockdown is a well-founded fear of contracting a once in a century deadly virus that can expect a price on a prisoner beyond that imposed by an ordinary day in prison. Particularly this inmate is suffering the weight of a lengthy sentence under substandard conditions. Overcrowding and deplorable conditions which leads to violent rioting that exacerbates one's mental health.

with a combined capacity of 3763 immigration inmates in three sub-complexes was described as one of "America's 10 worst prisons by - Mother Jones Magazine in part because of medical neglect.

Things do not state overtime, Petitioner is seeking fairness and relief challenging the provisions or lack thereof of medical, dental and mental health care.

Eastern District of New York gave credence to harshness of incarceration caused by the pandemic; Ameson, 05-cr-0301 (JS), https://www.gordondefense.com/blog/compassionate release/extraordinary compelling compassionate release/#ameson.

The Courts noted "a day spent in prison under extreme lockdown is a well-founded fear of contracting a once in a century deadly virus that can expect a price on a prisoner beyond that imposed by an ordinary day in prison. Particularly this inmate is suffering the weight of a lengthy sentence under substandard conditions. Overcrowding and deplorable conditions which leads to violent rioting that exacerbates one's mental health.

DEATH INSERT

I. DISCUSSION

Fifth Indifference claim, pursuant to the FSA the Court can grant petitioner's request for a sentence reduction, "if it finds that... extraordinary and compelling reasons warrant such a reduction... and that such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission[.] 18 USC §3582(c)(1)(A) and will consider petitioner's motion on the merits.

Petitioner argued that the 3553(a) factors weigh in favor of release. First, according to the presentence to the pre-sentence report offense of conviction was a non-violent crime whereby, petitioner as the Court is well aware, has a remote criminal history (if we look at facts and not conjecture) and his only one felony was something that could not have been tried in Federal Court, suggesting criminal history II was overstated. The record reflects trial attorney in his draft stated - "criminal history I is the appropriate application." The Court did not find him credible. Accordingly if

petitioner did indeed serve 60-days house arrest with an ankle monitor, he was indeed entitled to reduction and/or adjustment to a criminal category I. Herein 1. Petitioner poses no realistic danger to the community. His offense of conviction was a non-violent crime and moreover I have no prior criminal history.

2. The Court should recognize Petitioner's only one felony was reduced to a misdemeanor and he simply forgot to expunge it. Moreover, the felony fell past the ten year threshold thus - should not have been counted. The government in this case was not even aware of a 2012 judgment and/or was never served noting; ALL claims pertaining to 2012 were challenged and contested. Petitioner argued in previous motions he complied with 2006 order obtained settlement -agreements and the courts abused its discretion in not allowing any oral arguments, and/or defense to meet his burden.

Lastly, I have met the burden of proof pointing to plain error that was a fundamental defect which inherently resulted in a miscarriage of justice and a violation of due process citing United States v Timmreck, 441 US 780, 783-85 (1979) alleging this was an unconstitutional conviction or imprisonment. (tied to a racial bias).

Appellate Attorney did not argue unreasonable sentence on appeal despite both trial Attorney and sentencing attorney arguing, a shorter sentence should have been imposed taking into consideration unwarranted disparity and more culpable individuals. "As applied to Mr. Suite U.S.S.G. 2B1.1 and the upward adjustments, created a cumulative effect that warranted a substantial variance," adding Mr. Suite faced a 24-level increase in his base offense level that resulted in an "irrational and unjust" sentence - fueled by prosecurial misconduct and a racial animus.

QUID PRO

DKT 117, p. 38 gives insight into trial attorney's calculation of the guideline sentence expected albeit, not dispositive, it supports and/or gives insight to the inducement of the open plea [41-51 months] when conflated to the fact I the Defendant in this case bought the fable of "RDAP" which the District Court - endorsed [one year off sentence], given I was denied RDAP by FCI Berlin, NH, and 500 miles from family, which because a breach of the

11

inducement to the open plea rendering it not know[ing] and/or intelligent.
Petitioner further argued plea was invalid because he was not told it carried
a low level of proof notwithstanding he did not sign a waiver and/or was not
aware of the constitutional rights he was giving up.

Sixth Indifference claim goes to a Due Process violation that does not
state over-time. Defendant trumpeted [F]undamental miscarriage of justice
while both factually and legally innocent of (alleged) charge, due to
conspiracy ["axe to grind"] governmental misconduct, and racial/invidious
discrimination that becomes extraordinary and compelling.

This claim was brought at the first opportunity given to this defendant,
pursuant to 5th, 6th, 8th and 14th Amendments to the Constitution. [See Doc.
117, 121]. Here defendant argued pre-trial detention violated his substantive
due process because it authorized an impermissible punishment before trial
causing both an egregious excessive and inordinate delay that was
unconstitutional.

This claim was rejected and/or acquiesced yet the Supreme Court is clear
and concedes that pre-trial punishment is indeed unconstitutional when
combined to a racial animus, 'should shock the conscience'.

Upon arrest brought into the Court, Federal Public Defender [FPD] and
probation were told I would not be answering any questions until my attorney
arrived, I asked for a phone call and was denied. Without proper
representation I was detained - without an indictment - based on racial and
invidious discrimination for being black in the Ninth Circuit - evidenced by a
case that did not require a reputable presumption, a case not so onerous that
it should have provoked and impermissible hold as white defendants are
routinely released in this Court for lesser amounts or much greater.

✳✳✳✳ Here following a tangential adventure to coming before this Court, to not
getting a jab into the system, NOT being heard I waited 3-4 months for my due
process. Here charged with a 1.6 m crime, (a first time offender before the
court) with prima facie evidence that showed 600,000 invested, a remote
criminal history, (ties to community for 38+ years)(in the same residence for
14 years), strong family support and an excellent bond package (600,000+ of

real estate appraised properties).

That guaranteed my appearance back into court. As the Court well knows the imperfect entrapment was an issue the sentencing court considered for a variance. To that extent I the defendant raised a meritorious argument that should have merited a downward departure.

I the defendant suffered prejudice and injury as a result of this imperfect entrapment. The Court's determined I was not a flight risk, non-violent, (not a threat to the community), but rather an economic risk based on fabricated evidence, based on a lie that violated my substantive due process. Moreover, defendant argued if this case was such an easy case, why lie? Why manufacture evidence, why go back 30 years, on unadjudicated matters, perhaps it's because their case was not strong, certainly not strong enough to have denied this defendant bail. Statistically speaking defendants who are denied bail for the full duration leading up to trial are four times more likely to cop a plea.

As the Court is well aware, I the defendant in this case argued pre-post sentencing that I should not have been punished for offense(s) instigated by government officials. Further arguing the failure to grant bail as a result of fabricated evidence made a fair proceeding impossible resulting in a miscarriage of Justice.

Seventh deliberate indifference claim points to prosecutorial misconduct:
Blacks Law Dictionary (9th ed. 2009) defines prosecutorial misconduct as
follows: "(a) prosecutor's improper or illegal act (or failure to act),
especially involving an attempt to avoid required disclosure or to pervade the
jury to wrongly convict a defendant or assess an unjustified punishment."

Prosecutorial misconduct can take place at any point during the California
Criminal Court process – not just during the jury trial, but also during
pretrial proceedings (where punishment before adjudication took place with
other constitutional violations) or sentencing hearings.

A Habeas Corpus petition may be granted if the prosecutor at trial or
sentencing engaged in certain kinds of bad behavior. This can include but is
not limited to: 1. Presenting false testimony in Court (e.g. imperfect
enhancement, having victims do there bidding with false and erroneous
proffer); 2. Withholding key evidence favorable to this case. (e.g. No where
in government moving papers is there mention of the 1 million dollars invested
into partnership from honest services or that victims contradicted the use of
any alias stating I knew him as "Jerry Suite")

Defendant argued that the Court should recognize the only reason i pled to
using an alias was that I agreed with counsel that regardless "it did not go
to a material fact", something that would be borne out and argued at the mini-
trial, a mini-trial I expected to be conducted in lieu of trial, a mini-trial
I expected to take place immediately, not one year later. Had I known there
would be more delays I would not have pled to an open plea that was
involuntary and not knowing.

DEATH

The Court should recognize on the 17th of August 2023, plaintiff's unit and floor of residence was on lock-down, subsequently following an incident between a single inmate and a correctional officer that resulted in all doors being locked per instructions, enforced by Lieutenant Weaver and Correctional Officers Owens and Simmons. Subsequently inmate Antonio Cooper, went into cardiac arrest collapsing in the hallway. As inmates scrambled to obtain help, but was blocked, hindered from doing so because all exits, doors, were illegally locked. Mr. Cooper laid there like a fish in need of help that was not available. By the time correctional officers responded it was too late as CPR was performed. Mr. Cooper unfortunately died and a half hour later was taken out the back doors. Per eye witnesses he was taken to the gymnasium as medical was closed and outside ambulances refused to come on the site of Fort Dix because Mr. Cooper was already dead. The indifference here is that these locked doors put us all in danger, noting there are no call boxes, the air is perfumed with poor ventilation, fentenyl, and drugs in the air making it hard to breathe.

In addition, less than one month later a 28 year old on the same floor, in the same unit, believed to have died from similar conditions, poor ventilation and drugs allowed in by Fort Dix Facility members, indifferent to - inmates and plaintiff's safety. Moreover, there is no testing and Covid-19 is still present, evidenced by rooms on the same floor guaranteed at around the same period between July - October 2023, Plaintiff prays the Court will not turn a blind eye to these indifferences that are in violation of the Eighth Amendment afforded rights.

